IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

TERRY L. WATKINS                                                                                        PLAINTIFF

V.                                              NO. 13-5308

CAROLYN W. COLVIN,
Acting Commissioner of the Social Security Administration                      DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Terry L. Watkins, brings this action pursuant to 42 U.S.C. §495(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying his claims for a period of disability and disability insurance benefits (DIB) and supplemental security income (SSI) under the provisions of Titles II and XVI of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. § 405(g).

**I.      Procedural Background:**

Plaintiff protectively filed his applications for DIB and SSI on March 28, 2011, alleging an inability to work since December 31, 2010, due to heart condition; Hodgkin's disease; thyroid issues; PTSD (post traumatic stress disorder); gout; acid reflux; and sleep apnea. (Tr. 140-142, 148-154, 167, 171). An administrative hearing was held on May 3, 2012, at which Plaintiff appeared with counsel and testified. (Tr. 44-74).

By written decision dated September 21, 2012, the ALJ found that during the relevant time period, Plaintiff had an impairment or combination of impairments that were severe - coronary artery disease status post coronary artery bypass graft (CABG) surgery, essential hypertension, obstructive sleep apnea, diabetes mellitus, obesity, hypothyroidism, chronic neck and back pain, residuals of three knee surgeries, history of Hodgkin's disease status post radiation and chemotherapy, depression, not otherwise specified (NOS)/adjustment disorder, anxiety disorder/post-traumatic stress disorder (PTSD), and alcohol abuse/dependence in reported partial remission (20 CFR 404.1520(c) and 416.920(c)). (Tr. 12). However, after reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 12-13). The ALJ found Plaintiff retained the residual functional capacity (RFC) to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant is able to only occasionally climb, balance, stoop, kneel, crouch and crawl. In addition, he must avoid concentrated exposure to hazards, including driving as a part of work. Nonexertionally, the claimant can perform work where interpersonal contact is incidental to the work performed, the complexity of tasks is learned and performed by rote with few variables and use of little judgment, and the supervision required is simple, direct and concrete.

(Tr. 15). With the help of the vocational expert (VE), the ALJ determined that during the relevant time period, Plaintiff was not able to perform any past relevant work, but that there were other jobs Plaintiff would be able to perform, such as light work as a routing clerk-conveyor belt (e.g. a mail package sorter and assembler/production worker), and sedentary work as a machine operator or tender and production assembler (e.g. lens inserter-optical). (Tr. 21-22).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which

denied that request on November 4, 2013. (Tr. 1-4). Subsequently, Plaintiff filed this action. (Doc. 1). This case is before the undersigned pursuant to the consent of the parties. (Doc. 7). Both parties have filed appeal briefs, and the case is now ready for decision. (Docs. 15, 16).

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs, and are repeated here only to the extent necessary.

**II.    Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F. 3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision.  The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F. 3d 964, 966 (8th Cir. 2003).  As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001).  In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§423(d)(1)(A),

1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§423(d)(3), 1382(3)(D). A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing his claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national economy given his age, education, and experience. See 20 C.F.R. §416.920. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of his RFC. See McCoy v. Schneider, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §416.920.

### III. Discussion:

Plaintiff raises the following issues on appeal: 1) The ALJ erred in his credibility determination; 2) The ALJ erred in his RFC determination; 3) The ALJ erred in finding Plaintiff could perform the jobs identified at step five. (Doc. 15).

#### A. Credibility Determination:

Plaintiff argues that the ALJ determined Plaintiff's RFC before he made his credibility findings, which is legally improper. The ALJ was required to consider all the evidence relating

to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id. As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

In his opinion, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence and limiting effects of the symptoms were "not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. 15). The use of this language may indicate that the ALJ determined Plaintiff's RFC prior to making his credibility determination. This is similar to the language used in Bjornson v. Astrue, 671 F.3d 640, 644 (7th Cir. 2012), where the Court was critical of the use of this "boilerplate" language. In Bjornson, the Court stated that the government's brief described this passage as a "template," by which it means a "passage drafted by the Social Security Administration for insertion into any administrative law judge's opinion to which it pertains." Id. at 644-645. The Court further elaborated:

> One problem with the boilerplate is that the assessment of the claimant's "residual functional capacity" (the bureaucratic term for ability to work) comes later in the administrative law judge's opinion, not "above" - above is just the foreshadowed conclusion of that later assessment. A

>deeper problem is that the assessment of a claimant's ability to work will often (and in the present case) depend heavily on the credibility of her statements concerning the "intensity, persistence and limiting effects" of her symptoms, but the passage implies that ability to work is determined first and is then used to determine the claimant's credibility. That gets things backwards. The administrative law judge based his conclusion that Bjornson can do sedentary work on his determination that she was exaggerating the severity of her headaches. Doubts about credibility were thus critical to his assessment of ability to work, yet the boilerplate implies that the determination of credibility is deferred until ability to work is assessed without regard to credibility, even though it often can't be. ...
>
>The Social Security Administration had better take a close look at the utility and intelligibility of its "templates."

Id. at 645-646. The Bjornson Court ultimately reversed and remanded the matter. Id. at 648. Cases that have subsequently considered the Bjornson case have distinguished the facts of their cases. In Bishop v. Commissioner of Social Security, No. 14-1042, 2014 WL 4347190 (4th Cir., Sept. 3, 2014), the Fourth Circuit noted that the ALJ's language was similar to that in Bjornson, but found that the ALJ cited "specific contradictory testimony and evidence in analyzing Plaintiff's credibility and averred that the entire record had been reviewed. Given that this case is not one of exceptional circumstances, see Eldeco, Inc. v. NLRB, 132 F.3d 1007, 1011 (4th Cir. 1997), we uphold the ALJ's credibility determination"[1] Bishop, 2014 WL 4347190 at *2.

In Romero v. Colvin, 563 Fed.Appx. 618 (10th Cir. 2014), the Tenth Circuit declined to reverse the case on the ground that the ALJ used the same boilerplate language as was used in Bjornson, stating that the "use of ... boilerplate is problematic only when it appears 'in the absence of a more thorough analysis.'" Romero 563 Fed. Appx.at 620-621, quoting Keyes-

---

[1] In Eldeco, the 4th Circuit stated that exceptional circumstances included cases where a credibility determination is unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all. Id. 132 F.3d at 1011, quoting NLRB v. McCullough Environmental Services, Inc., 5 F.3d 923, 928 (5th Cir. 1993).

Zachary v.Astrue, 695 F.3d 1156, 1170 (10th Cir. 2012). The Court noted that the ALJ discussed various credibility factors explicitly.

Finally, in Scott v. Colvin, No. 4:12-CV-01569, 2013 WL 6047555 (S.D.Tex., Nov. 14, 2013), the Court was presented with the same argument regarding the use of the boilerplate language, and the application of Bjornson. The Court determined that the ALJ provided more than "mere boilerplate" language, and listed several activities that he found contradicted Plaintiff's subjective limitations. Id. at *11-12. The Court concluded that the ALJ properly detailed the specific evidence that led him to find that Plaintiff's testimony was not fully credible and that he did not err in his credibility finding and subsequent RFC determination. The Court further stated that there was no evidence whatsoever that the ALJ first pre-determined Plaintiff's RFC before evaluating the credibility of Plaintiff's testimony. "'In fact, the language of the decision and the hearing transcript conclusively show that the ALJ considered all of the evidence in the record, including Scott's testimony. Thus, the ALJ evaluated Scott's credibility against the level of disability that she claimed, not the level that the ALJ 'pre-determined.'" Id. at *12.

The Eighth Circuit in Pearsall v. Massanari, 274 F.3d 1211, sets forth the general proposition that before determining a claimant's RFC, the ALJ "first must evaluate the claimant's credibility." Id. at 1218. However, the Court in Massanari was not presented with the issues that are now before the Court in this case.

In the ALJ's decision now before the Court, when discussing whether Plaintiff's mental impairments met or medically equaled the severity of one of the listed impairments, the ALJ addressed Plaintiff's daily activities, noting that Plaintiff had mild restriction. (Tr. 13-14). The ALJ discussed the fact that Plaintiff admitted to a long history of alcohol dependence and abuse,

-7-

but testified at the hearing that he currently drank only occasionally. (Tr. 15). The ALJ further discussed the fact that Plaintiff was noncompliant with medications at times, and continued to dip tobacco and drink alcohol excessively, in spite of the fact that he had been advised on numerous occasions to quit both. (Tr. 16). The ALJ noted that although Plaintiff alleged knee pain, it was unclear from the record when he actually had three knee surgeries. (Tr. 17). The ALJ also reported that the record contained few references to Plaintiff's back and neck pain, and that the x-rays were normal, there was no spinal tenderness, muscle power of 5/5 in all extremities, normal reflexes, good range of motion in the lumbar spine with negative straight leg raises and a normal gait. (Tr. 17). The ALJ reported that although Plaintiff was diagnosed with obstructive sleep apnea, he continued to drink alcohol every night, and had trouble with the CPAP mask.

The ALJ also noted in his decision that on several occasions in 2009, Plaintiff stated he had decreased his alcohol consumption but that notes indicated he remained noncompliant with his psychiatric medications, and later admitted he had not decreased his drinking at any point. (Tr. 19). In addition, the ALJ reported that in March of 2010, VA clinic notes indicated that Plaintiff had been prescribed Effexor but had not refilled it since December 2009, and that the doctor noted that Plaintiff did not appear to want to take the medications, despite his wife's report that he was less angry when he took it. Plaintiff also admitted to continued alcohol and tobacco use. (Tr. 19). The ALJ noted that in August of 2010, Plaintiff admitted to Dr. Soe to continued frequent overuse of alcohol but refused substance abuse treatment. (Tr. 19). The ALJ reported that Plaintiff reported to Dr. Patricia Walz, Ph.D., that he took no medications for pain. (Tr. 20).

As was found in <u>Bishop</u>, the Court believes in this case that the ALJ cited to specific

contradictory testimony and evidence in analyzing Plaintiff's credibility and averred that the entire record had been reviewed.  The fact that the ALJ used "boilerplate" language is not a problem in this case, because the ALJ conducted a thorough analysis, see Romero, 563 Fed.Appx. At 620-621; nor was there evidence indicating that the ALJ first pre-determined Plaintiff's RFC before evaluating the credibility of Plaintiff's testimony. See Scott. 2013 WL 6047555 at *12.

Based upon the foregoing, the Court finds there is substantial evidence to support the ALJ's credibility findings.

### B.     RFC Determination:

Plaintiff argues that the ALJ's RFC determination is inconsistent with the bulk of the evidence in the record and is not supported by substantial evidence and that the ALJ erred by ignoring the assessment from Plaintiff's treating sources.

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1).  It is assessed using all relevant evidence in the record. Id.  This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of  his limitations.  Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004).  Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. Lewis v. Barnhart,

-9-

353 F.3d 642, 646 (8th Cir. 2003).  "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id.

In determining Plaintiff's RFC, the ALJ addressed the medical records, and set forth the weight he gave to the various physician's opinions. The ALJ gave the opinion of Dr. Lubna Maruf little weight, because he concluded that it was not consistent with the objective medical evidence as a whole. (Tr. 18). The ALJ also stated that Plaintiff had received the majority of his treatment in Fort Smith, Arkansas, and that Dr. Maruf's opinion was written only a short time after he had transferred his care to Little Rock, Arkansas, and appeared to be based heavily upon the Plaintiff's subjective limitations and complaints.  The ALJ gave great weight to the opinion of non-examining consultant Dr. Robert Redd, who opined that Plaintiff retained the ability to perform a range of light exertional level work. (Tr. 18). The ALJ further noted that the vast medical evidence provided by Plaintiff did not support a finding of disabling physical limitations after successful coronary artery bypass graft surgery in February 2009, and successful treatment of Hodgkin's disease currently in remission. (Tr. 18).

With respect to Plaintiff's mental impairments, the ALJ discussed the opinions given by Dr. Patricia Walz, Dr. Christal Janssen, and Melinda Fair, APN. (Tr. 20-21). He gave substantial weight to the opinions of Dr. Walz and Dr. Janssen, noting that they were consistent with each other and consistent with the medical evidence as a whole. The ALJ gave Ms. Fair's opinion little weight, as it was not supported by the medical evidence as a whole and was inconsistent with the opinions of Drs. Walz and Janssen, who are acceptable medical sources, whereas Ms. Fair, as an APN, is not an acceptable medical source. (Tr. 21).

"A treating physician's opinion is not automatically controlling." Grable v. Colvin, No.

13-3050, 2014 WL 5756209 at *3 (8th Cir., Nov. 6, 2014) citing Turpin v. Colvin, 750 F.3d 989, 994 (8th Cir. 2014). "An ALJ may 'discount or disregard a treating physician's opinion where other medical assessments are supported by better or more through medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions.'" Grable, 2014 WL 5756209 at *3, quoting Smith v. Colvin, 756 F.3d 621, 625-26 (8th Cir. 2014).

The ALJ concluded, after carefully considering the entire record, that Plaintiff retained the RFC to perform a range of "light" work, which he found was supported by Plaintiff's own testimony as to his activities of daily living, Plaintiff's frequent noncompliance with medications, as well as his report to doctors he had stopped (or decreased) drinking alcohol with a later admission he had not, and by the significant weight given to the opinions of Drs. Walz and Janssen, who stated Plaintiff was able to perform at least some types of work. (Tr. 21).

The Court finds, based upon the foregoing, that there is substantial evidence to support the ALJ's RFC determination and the weight he gave to the various opinions of the physicians.

### C. Step 5 Determination:

Plaintiff argues that the VE's testimony could not be the basis for the ALJ's conclusion that there are other jobs Plaintiff could perform because the hypothetical given to the VE was not accurate. The ALJ posed the following hypothetical question to the VE:

> Q: The hypothetical individual same age, education, and past work as Mr. Watkins. That individual is limited to light level work as defined by the social security regulations. Occasional climbing, balancing, stooping, kneeling, crouching, crawling.
> Ability to perform work or interpersonal contact is incidental to the work performed. The complexity of tasks can be performed by rote with few variables. Supervision required is simple, direct and concrete.

> I would assume that the mental limitations are going to preclude all Mr. Watkins' past work?
> A:. That is correct.
> Q: Can you identify light level jobs that would accommodate all those limits?
> A: The hypothetical that you had presented places an individual in a light unskilled job base with occasional postural.
> Q: Add avoid concentrated exposure to hazards including no driving as part of the work.
> A: One example would be routing clerk, 222.687-022, light, unskilled, SVP-2, 40,000 nationally, 300 state.
> Assembly work production, 706.687-010, light, unskilled, SVP-2, 2,000 nationally, 2,500 state.

(Tr. 67-68). The VE also gave the ALJ sedentary jobs Plaintiff would be able to perform, such as machine operator tender and zipper machine trimmer machine operator, and assembler. (Tr. 68-69).

The Court finds that the hypothetical the ALJ posed to the VE fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005). Accordingly, the Court finds that the VE's response to the hypothetical questions posed by the ALJ constitute substantial evidence supporting the ALJ's conclusion that Plaintiff's impairments did not preclude him from performing the jobs of routing clerk-conveyor belt, e.g. mail package sorter, assembler/production worker, machine operator or tender and production assembler, e.g. lens inserter-optical. Pickney v. Chater, 96 F.3d 294, 296 (8th Cir. 1996)(testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

**IV. Conclusion:**

Accordingly, having carefully reviewed the record, the Court finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision is hereby

affirmed. The Plaintiff's Complaint should be, and is hereby, dismissed with prejudice.

IT IS SO ORDERED this 17th day of November, 2014.

>  */s/ Erin L. Setser*
> HONORABLE ERIN L. SETSER
> UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)